## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COLONIAL PARK CARE CENTER, LLC d/b/a/ COLONIAL PARK CARE CENTER,** | : : : : | **CIVIL ACTION NO. 1:16-CV-302**  **(Chief Judge Conner)** |
| **Plaintiff** | : : | |
| **v.** | : : | |
| **THEODORE DALLAS, the Secretary of the Pennsylvania Department of Human Services,** | : : : : | |
| **Defendant** | : | |

### <u>MEMORANDUM</u>

Plaintiff Colonial Park Care Center, LLC ("Colonial Park") filed the above-captioned action against defendant Theodore Dallas, in his official capacity as Secretary of the Pennsylvania Department of Human Services ("the Department"). Colonial Park seeks a declaratory judgment from this court which would determine: whether the Department's failure to provide nursing home care to John Matjasic ("Matjasic") violates the Medicaid Act, 42 U.S.C. § 1396p(c)(2)(D); whether the Department's actions violate the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, and accompanying regulations, 28 C.F.R. § 35.130; and whether the Department should automatically approve Matjasic's application for an undue hardship waiver. (Doc. 1 ¶ 32). Before the court is the Department's motion (Doc. 9) to dismiss, in which the Department asserts that the court lacks subject matter jurisdiction and that Colonial Park fails to state a claim upon which relief can be granted. The court will grant the Department's motion.

## I.    <u>Factual Background & Procedural History</u>

Colonial Park is a nursing home facility located in Harrisburg, Pennsylvania. (Doc. 1 ¶ 1). Colonial Park admitted Matjasic in March 2012 after he suffered a stroke and seizure that left him unable to perform basic life functions. (<u>Id.</u> at ¶¶ 7-8). Matjasic became insolvent shortly thereafter and required state aid to pay for his nursing home care. (<u>Id.</u> at ¶ 11). Because Matjasic irrevocably assigned to Colonial Park his rights to Medicaid funds, Colonial Park sought funding from the Pennsylvania Medical Assistance Long Term Care program ("MA-LTC") on his behalf. (Doc. 1, Ex. B). Colonial Park submitted an application to the Department in July 2013 for MA-LTC benefits beginning retroactively from November 2012. (Doc. 1, Ex. D).

Colonial Park's application initiated a five-year look back period, meaning that the Department would examine Matjasic's asset transfers between November 2007 and November 2012. (<u>Id.</u>) The Department concluded that Matjasic was eligible for medical assistance beginning November 1, 2012, but determined that Matjasic was ineligible for long-term care assistance until March 4, 2014 because Matjasic gave away several of his assets, or transferred them for less than fair market value, during the look back period. (Doc. 1, Ex. B). Colonial Park filed an undue hardship waiver application in January 2014, which the Department denied on April 3, 2014. (Doc. 1, Ex. C). Colonial Park appealed the Department's decision, and on August 16, 2014, an administrative law judge denied Colonial Park's appeal, affirming the Department's determination. (Doc. 1, Ex. D). Colonial Park appealed the administrative law judge's decision to the Commonwealth Court of

Pennsylvania.  (Doc. 1 ¶ 17).  The Commonwealth Court affirmed the administrative

law judge's decision on July 15, 2015.  (Doc. 1, Ex. D).

Colonial Park filed the instant action on February 19, 2016.  Colonial Park

seeks a declaratory judgment and asks the court to conclude that the state decisions

conflict with several provisions of the Medicaid Act.  (Doc. 1).  Colonial Park also

asserts new claims under the ADA.  (Doc. 1).  The Department filed a motion to

dismiss on April 12, 2016, and amended its motion on April 18, 2016.  (Doc. 7).  The

motion is fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a

claim for lack of subject matter jurisdiction.  <u>See</u> FED. R. CIV. P. 12(b)(1).  Such

jurisdictional challenges take of one two forms: (1) parties may levy a "factual"

attack, arguing that one or more of the pleading's factual allegations are untrue,

removing the action from the court's jurisdictional ken, <u>see</u> <u>Mortensen v. First Fed.</u>

<u>Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977); or (2) they may assert a "facial"

challenge, which assumes the veracity of the complaint's allegations but

nonetheless argues that a claim is not within the court's jurisdiction.  <u>See</u> <u>Tolan</u>

<u>v. United States</u>, 175 F.R.D. 507, 510 (E.D. Pa. 1998).  In either instance, it is the

plaintiff's burden to establish jurisdiction.  <u>See</u> <u>Mortensen</u>, 549 F.2d at 891.  Courts

should grant a Rule 12(b)(1) motion only when it appears with certainty that

assertion of jurisdiction would be improper.  <u>See</u> <u>Gould Elecs. Inc. v. United States</u>,

220 F.3d 169, 178 (3d Cir. 2000); <u>see also</u> <u>Tolan</u>, 176 F.R.D. at 510.

III. __Discussion__

The Department avers that Colonial Park's complaint is defective on two procedural grounds.  First, the Department contends that Colonial Park's federal complaint is barred by the Rooker-Feldman doctrine.  Second, the Department asserts that the court should dismiss Colonial Park's complaint because its legal allegations are *res judicata*.  Because the court concludes that the doctrine of *res judicata* requires it to grant the Department's motion, the court declines to address the other grounds raised by the parties.   The court will address the relevant issues *seriatim*.

A.  The __Rooker__-__Feldman__ Doctrine

Section 1257 of Title 28 of the United States Code grants the Supreme Court of the United States sole authority to review state court decisions.  28 U.S.C. § 1257. A federal district court has no appellate jurisdiction over the final determinations of state courts.  Id.; Rooker v. Fid. Tr. Co., 263 U.S. 413, 416 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983).   The Rooker-Feldman doctrine "prohibits the district court from exercising jurisdiction" when a state court judgment precedes a federal suit.  Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 163-64 (3d Cir. 2010).

Under the Rooker-Feldman doctrine, federal courts lack jurisdiction when reviewing previously-litigated state actions, or when reviewing matters which are "inextricably intertwined" with a state-court adjudication or judgment.  Rooker, 263 U.S. at 416; Feldman, 460 U.S. at 476; Parkview Assocs. P'ship v. City of Lebanon,

4

225 F.3d 321, 325 (3d Cir. 2000).  A federal claim is "inextricably intertwined" with a state-court adjudication when, "to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." Ernst v. Child & Youth Servs. of Chester Cty., 108 F.3d 486, 491 (3d Cir. 1997) (quoting FOCUS v. Allegheny Cty. Court of Common Pleas, 75 F.3d 843, 840 (3d Cir. 1996); see also In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005).

The Supreme Court has recently explained that the Rooker-Feldman doctrine is exceedingly narrow.  Lance v. Dennis, 546 U.S. 459, 464 (2006).  The court is thus mindful that it must not apply the doctrine "beyond the contours of the Rooker and Feldman cases," meaning that federal courts only lack jurisdiction when a complained-of injury is "caused by [a] state court judgment." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 282-84 (2005)).   The court also considers whether the state court's judgment is the source of its new alleged injury.  Id. at 542 (quoting Holt v. Lake Cty. Bd. of Comm'rs, 408 F.3d 335, 336 (7th Cir. 2005)).

When determining whether a complaint merits dismissal pursuant to the Rooker-Feldman doctrine, the court considers whether the allegations of injury are: "[1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." Reisinger

 v. Luzerne Cty., 712 F. Supp. 2d 332, 348 (M.D. Pa. 2010) (quoting Exxon Mobil, 544 U.S. at 284).  Colonial Park requests a declaratory judgment relating to several issues that Pennsylvania state agencies and the Commonwealth Court have already adjudicated.  These bodies adjudicated the issues before the instant action commenced.  Hence the remaining issues relating to the Rooker-Feldman doctrine are the extent to which the state adjudications caused Colonial Park's complained-of injuries, and the extent to which this court would review and reject those adjudications.

In its complaint, Colonial Park requests a declaratory judgment and that the court determine: (1) "[w]hether Defendant's interpretation of the undue hardship waiver provisions and subsequent failure to approve Mr. Matjasic's application violates the federal Medicaid Act and implementing regulations, specifically 42 U.S.C. § 1396p(c)(2)(D) and Transmittal 64, § 3258.10C5;" (2) "[w]hether the actions of Defendant, as stated in the paragraphs above, violate Mr. Matjasic's rights under the ADA by requiring a higher showing for undue hardship waiver for disable[d] individuals residing in long term care facilities in the state of Pennsylvania, 42 U.S.C. § 12132, and 28 C.F.R. § 35.130"; and (3) "[w]hether Defendant should be compelled to automatically approve Mr. Matjasic's undue hardship waiver application." (Doc. 1 ¶¶ 32(a)-(c)).   The Department argues that the court must reverse the state adjudications *sub judice* if it were to grant Colonial Park's prayers for relief and that such judicial action would violate the dictates of the Rooker-Feldman doctrine.  (Doc. 20).

6

Colonial Park's allegations are indeed similar to those that arose during the state proceedings, but none of the allegations in Colonial Park's federal complaint amount to an appeal of the underlying state-court judgment, the type of activity the Rooker-Feldman doctrine seeks to prevent.  See Exxon Mobil, 544 U.S. at 284. Colonial Park's appeal to the Commonwealth Court was strictly circumscribed to issues relating to the findings and conclusions of the administrative law judge and the Department.  (Doc. 1, Ex. D).  The appeal focused on the substantive issues concerning Pennsylvania's look back period, and the Department's interpretation of Pennsylvania's undue hardship waiver provisions.  (Id.)  Pennsylvania law governed Colonial Park's appeal.  (Id.)  The matter *sub judice*, however, concerns whether the Department's actions and policies conform to the federal Medicaid Act and relevant implementing regulations. (See Doc. 1 ¶ 32).  Colonial Park also raises an ADA claim.  (Id.)  Colonial Park had no opportunity to raise the ADA claim before the administrative law judge, nor did it raise the claim on appeal.  (Id.)

The Rooker-Feldman doctrine is thus inapplicable to this case because the state court judgment did not cause Colonial Park's alleged injury.  Exxon Mobil, 544 U.S. at 284.  Colonial Park's complaint simply raises claims that overlap with those raised during the state adjudications.  The two sets of claims undoubtedly share the same factual background, but the court cannot apply the Rooker-Feldman doctrine "beyond the contours of the Rooker and Feldman cases.  Turner, 449 F.3d at 547 (quoting Exxon Mobil, 544 U.S. at 282-84).  Colonial Park alleges that the Department violated the Medicaid Act and the ADA; such allegations arise from

facts alleged in the complaint, not directly from state court judgments.  (Doc. 1).

The court concludes that the Rooker-Feldman doctrine is inapplicable.

## B.  *Res Judicata*

In its recent Rooker-Feldman cases, the Supreme Court has opined that

"disposition of the federal action, once the state-court adjudication is complete, [is]

governed by preclusion law.  The Full Faith and Credit Act, 28 U.S.C. § 1738 . . .

requires the federal court to give the same preclusive effect to a state-court

judgment as another court of that State would give."  Exxon Mobil, 544 U.S. at 293

(citations and internal quotation marks omitted).  Because a valid state court

judgment precedes Colonial Park's federal claim, the court turns to preclusion law

to determine whether this action may proceed.  Turner, 449 F.3d at 548 (citing

Exxon Mobil, 449 F.3d at 293).

The Pennsylvania Supreme Court has explained that *res judicata*:

> bars a later action on all or part of the claim which was
> the subject of the first action.  Any final, valid judgment
> on the merits by a court of competent jurisdiction
> precludes any future suit between the parties or their
> privies on the same cause of action.  *Res judicata applies
> not only to claims actually litigated, but also to claims
> which could have been litigated during the first proceeding
> if they were part of the same cause of action.*

Id. (quoting Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995)).

Additionally, "Pennsylvania courts require that the two actions share the following

four conditions: (1) the thing being sued upon or for; (2) the cause of action; (3) the

persons and parties to the action; and (4) the capacity of the parties to sue or be

sued."  Id.  (citing Bearoff v. Bearoff Bros., Inc., 327 A.2d 72, 74 (Pa. 1974)).

8

Importantly, in discerning whether two actions constitute the same cause of action, Pennsylvania courts have explained that they apply *res judicata* where courts have already rendered judgments on different cases based on the same factual circumstances. <u>McArdle v. Tronetti</u>, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993) (quoting <u>In re</u> <u>Jones & Laughlin Steel Corp.</u>, 477 A.2d 527, 531 (Pa. Super. Ct. 1984)). Pennsylvania courts evaluate "the identity of the acts complained of, the demand for recovery, the identity of witnesses, documents, and facts alleged" when determining whether *res judicata* bars relitigating certain actions. <u>Id.</u>

The two actions at issue here share the same parties, and the parties have the same capacity to sue and be sued.  Both actions also maintain "the thing being sued upon or for," namely, a judgment forcing the Department to provide Colonial Park MA-LTC coverage retroactive to November 2012, either via a ruling on the look back period or a ruling on the undue hardship waiver application denial.  (Doc. 1 ¶¶ 32(a)-(c); Ex. D).  The paramount issue is whether the two actions possess the same causes of action under Pennsylvania law.

The court finds that Colonial Park's state proceedings and the instant complaint bear the same causes of action.  At first blush, the actions appear distinct, but they arise from the same factual circumstances.   Colonial Park's complaint contains the same identity of witnesses, documents, and facts as those in the initial state court proceedings.  (<u>Compare</u> Doc. 1 ¶¶1-32 <u>with</u> Doc. 1 Ex. D).  Colonial Park also demands a recovery indistinguishable from that in the state proceedings.  (Doc. 1).  The "identity of the acts complained of" in the federal and state actions are also equivalent, to wit: the Department's rejection of Matjasic's MA-LTC application and

9

adherence to Pennsylvania's look back period, and the Department's denial of Matjasic's undue hardship waiver application. (Doc. 1 ¶¶ 32(a)-(c)). The court discerns no readily distinguishable act that separates the two causes of action.

Finally, the court notes that Colonial Park had no jurisdictional obstacle that would have prevented it from raising its asserted federal claims in state court. State courts and federal courts "have concurrent jurisdiction over ADA cases." Krouse v. Am. Sterilizer Co., 872 F. Supp. 203, 205 (W.D. Pa. 1994) (citing Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 821, 821 (1990)). No ascertainable barriers prevented Colonial Park from raising its Medicaid Act arguments in its appeal to the Commonwealth Court. Hence Colonial Park only appealed the denial of benefits to the administrative law judge and the Commonwealth Court, despite its ability to raise those claims. Colonial Park cannot now raise claims in federal court when it had the opportunity to do so in the Commonwealth Court. The court accordingly concludes that Colonial Park's claims are barred by the doctrine of *res judicata*, and that Colonial Park's complaint should be dismissed with prejudice.

**IV.** **Conclusion**

The court will grant the Department's motion (Doc. 7) and dismiss Colonial

Park's complaint (Doc. 1) with prejudice.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:         September 13, 2016